### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIEL BRENDAN BRANDT,                  :       Civil No. 3:26-cv-96
                                      :
        Plaintiff            :       (Judge Mariani)
                                      :
    v.                              :
                                      :
JOSHUA MOYER,                         :
                                      :
        Defendant            :

### MEMORANDUM

Plaintiff Kiel Brandt ("Brandt"), an inmate confined at the Federal Correctional Institution, Lewisburg, Pennsylvania, initiated this action against Case Manager Joshua Moyer pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[1] (Doc. 1). Brandt alleges violations of his rights under the First and Fifth Amendments. (*Id.*).

Presently pending is Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 29). Pursuant to Federal Rule of Civil Procedure 12(d), the motion will be treated as one for summary judgment, and disposed of as provided in Rule 56, only with respect to the issue of exhaustion of administrative remedies.[2] For the reasons set forth below, the Court will grant Defendant's motion.

---

[1]  In *Bivens*, the United States Supreme Court created a federal tort counterpart to the remedy created by 42 U.S.C. § 1983 as it applies to federal officers.

[2]  The Court issued an Order apprising the parties that the motion to dismiss would be treated as one for summary judgment with respect to the issue of exhaustion of administrative remedies. (Doc. 36).

## I.    Background

Brandt is serving a 27-month sentence imposed in the United States District Court

for the Eastern District of Virginia for wire fraud.  (Doc. 35-1, Declaration of BOP Unit

Manager Chase Emerson ("Emerson Decl.") ¶ 3; Doc. 35-2, Public Information Inmate

Data).  According to documentation submitted by Defendant, Brandt's anticipated release

date is January 17, 2027, via First Step Act Release.  (*Id.*).  However, a review of the

Bureau of Prisons' ("BOP") inmate locator indicates that Brandt's projected release date is

now December 18, 2026.[3]

In the complaint, Brandt alleges that Defendant Moyer is his assigned case manager

and retaliated against him "by sabotaging [his] prerelease placement under the Second

Chance Act and by imposing extrajudicial punishment[.]" (Doc. 1, at 1-2).

Brandt alleges that he engaged in constitutionally protected activity by filing inmate

grievances, contacting Congressional offices, and communicating with members of the

press.  (*Id.* at 2).  In retaliation for these protected acts, Defendant Moyer allegedly "caused

Plaintiff to be escorted to Receiving and Discharge ("R&D")" where he was placed in a

windowless holding cell for four hours.  (*Id.*).  Brandt alleges that while he was in this

---

Because Defendants raised the issue of exhaustion of administrative remedies, the Court also notified the parties that it would consider exhaustion in its role as factfinder in accordance with *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) and *Small v. Camden Cnty.*, 728 F.3d 265 (3d Cir. 2013), and afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies.  (Doc. 36).

[3]    *See* FEDERAL BUREAU OF PRISONS' INMATE LOCATOR, https://www.bop.gov/inmateloc/ (searching Inmate Number 52132-511) (last visited June 30, 2026).

holding cell, Defendant Moyer searched his assigned housing unit and cell and "trashed Plaintiff's cell." (Id.).

During his incarceration within the BOP, Brandt has filed three administrative remedies. (Doc. 35-1, Emerson Decl. ¶ 5; Doc. 35-3, Administrative Remedy Generalized Retrieval). None of the administrative remedies filed by Brandt have received a final denial from the Central Office. (Id.).

## II.    Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. Anderson, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III.    Discussion

### A.    Administrative Exhaustion

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983…by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Stated differently, the exhaustion of available administrative remedies is a prerequisite for a prisoner asserting a claim under Section 1983 regarding their prison conditions. *See Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018); *see also Ross v. Blake*, 578 U.S. 632, 638 (2016) (reiterating that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies" (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006))); *Jones v. Bock*, 549 U.S. 199, 211 (2007) (stating that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (citation omitted)); *Booth v. Churner*, 532 U.S. 731, 733-34 (2001) (stating that the PLRA "now requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions" (quoting 42 U.S.C. § 1997e(a))).

"The PLRA requires proper exhaustion, meaning 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'" *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (alteration in original) (quoting *Woodford*, 548 U.S.

5

at 88).  "These procedural rules are supplied by the individual prisons." *Downey*, 968 F.3d

at 305 (citations omitted); *see also Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004) (stating

that "the determination [of] whether a prisoner has 'properly' exhausted a claim…is made by

evaluating the prisoner's compliance with the prison's administrative regulations governing

inmate grievances"); *Jones*, 549 U.S. at 218 (explaining that "[t]he level of detail necessary

in a grievance to comply with the grievance procedures will vary from system to system and

claim to claim"); *Woodford*, 548 U.S. at 90 (indicating that "[p]roper exhaustion demands

compliance with an agency's deadlines and other critical procedural rules"). A prisoner's

failure to follow a prison's procedural rules will result in a procedural default of their claims.

*See Spruill*, 372 F.3d at 230-32 (concluding that PLRA's exhaustion requirement includes

procedural default component); *see also Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir.

2010) (pointing out that *Spruill* held "that the PLRA includes a procedural default component

and the determination whether a prisoner properly exhausted a claim is made by evaluating

compliance with the prison's specific grievance procedures"). A procedural default may be

excused, however, if the prisoner can show that the administrative remedies were

unavailable to them. *See Rinaldi*, 904 F.3d at 266 ("The PLRA requires only 'proper

exhaustion,' meaning exhaustion of those administrative remedies that are 'available.'"

(quoting *Woodford*, 548 U.S. at 93)). "Available means capable of use; at hand." *Small v.*

*Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013) (internal citations and quotation marks

omitted). "An administrative remedy is unavailable when it 'operates as a simple dead

6

end[,]…is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Downey*, 968 F.3d at 305 (alterations in original) (quoting *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019)). "Although the availability of administrative remedies to a prisoner is a question of law, it necessarily involves a factual inquiry." *Small*, 728 F.3d at 271.

The BOP has established a multi-tier system enabling a federal prisoner to seek formal review of any aspect of his imprisonment. 28 C.F.R. §§ 542.10-542.19. Before seeking formal review, an inmate must attempt to informally resolve the issue with institutional staff by completing a BP-8 form. 28 C.F.R. § 542.13. If informal resolution is unsuccessful, the inmate may present the issue to the Warden within 20 days of the date of the event giving rise to the administrative remedy request by filing a BP-9 form. 28 C.F.R. § 542.14. The Warden has 20 days to respond. 28 C.F.R. § 542.18. An inmate dissatisfied with the Warden's response may submit an appeal on a BP-10 form to the BOP Regional Director within 20 days. 28 C.F.R. § 542.15(a). The Regional Director has 30 days to respond to an appeal. 28 C.F.R. § 542.18. If the Regional Director denies the appeal, the inmate may then appeal to the BOP's Central Office, General Counsel, by submitting a BP-11 form within 30 days. 28 C.F.R. § 542.15(a). The Central Office has 40 days to respond. 28 C.F.R. § 542.18. No administrative remedy is considered fully exhausted until it is decided on its merits by the Central Office. 28 C.F.R. §§ 541.10-542.19.

Here, Defendant argues that Brandt failed to exhaust his administrative remedies as required by the PLRA. (Doc. 35, at 11-15). Defendant has supported his argument with record evidence, including the declaration of BOP Unit Manager Chase Emerson and the BOP Administrative Remedy Generalized Retrieval. (Docs. 35-1, 35-3). Defendant argues that while in BOP custody, Brandt filed three administrative remedies, and he never received a final denial from the Central Office for any of those three administrative remedies. (*See id.*). Those remedies are as follows.

On August 8, 2025, Brandt filed administrative remedy 1252532-F1 with the institution, requesting a review of his Residential Reentry Center ("RRC") placement time. (Doc. 35-3, at 3). The institution denied the remedy. (*Id.*). Brandt filed an appeal to the Regional Director, designated as remedy 1252532-R1. (*Id.*). The Regional Director denied the remedy. (*Id.*). There is no evidence that Brandt appealed this denial to the Central Office. (*See* Doc. 35-3).

On February 23, 2026, Brandt filed administrative remedy 1269193-F1 with the institution, wherein he requested legal mail logs. (Doc. 35-3, at 4). The institution denied the remedy. (*Id.*). There is no evidence that Brandt appealed this denial to the Regional or Central Offices. (*See* Doc. 35-3).

Two conclusions can be drawn from this grievance history.

First, Brandt never filed an administrative remedy concerning the claims in the instant action—that his case manager, Defendant Moyer, violated his rights under the First and Fifth Amendments.  (*See* Doc. 35-3).

Second, with respect to the administrative remedies that Brandt did file, there is simply no evidence of record that he appealed the denial of those remedies to the Central Office and that he ever received a final denial from the Central Office.  (*See* Doc. 35-3). After the Regional Director denied administrative remedy 1252532, the next step Brandt should have taken was to file a BP-11 appeal to the Central Office within 30 days of the Regional Office's response, 28 C.F.R. § 542.15.  Brandt failed to appeal to the Central Office and never received a final denial from the Central Office.  (*See* Doc. 35-3).

And, after the institution denied administrative remedy 1269193-F1, the next step Brandt should have taken was to file a BP-10 appeal to the Regional Office within 20 days of the Warden's response, 28 C.F.R. § 542.14(a), and then, if unsatisfied with the Regional Director's response, file a BP-11 appeal to the Central Office within 30 days of the Regional Office's response, 28 C.F.R. § 542.15.  Brandt failed to appeal the institution's response at all.  (*See* Doc. 35-3).

And so, Brandt abandoned administrative remedies 1252532 and 1269193 by failing to fully exhaust the administrative remedy process.  The Administrative Remedy history sheet shows that Brandt never filed an appeal to the Central Office, and never received a final denial from that Office, with respect to administrative remedies 1252532 and 1269193.

(*See* Doc. 35-3).  Thus, the record shows that Brandt failed to exhaust his administrative remedies as to numbers 1252532 and 1269193.  A prisoner's failure to comply with the procedural and substantive requirements of the grievance policy results in procedural default, thereby precluding an action in federal court.  *See Woodford*, 548 U.S. at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules"); *Spruill*, 372 F.3d at 227-32.

As Defendant has provided evidence to support his failure to exhaust defense, the burden shifts to Brandt to produce evidence that the BOP administrative remedy process was not available to him.  Brandt has failed to meet this burden.  He did not provide any evidence, via an affidavit, declaration, or other statement made under penalty of perjury to support a claim that he properly exhausted his claims or that the administrative remedy process was not available to him.  And the record does not support a finding that the administrative process was unavailable to Brandt.  Under Rule 56, Brandt was required to establish the existence of a genuine dispute of material fact.  *See Celotex Corp.*, 477 U.S. at 324.  He has failed to do so.  The Court will accordingly grant summary judgment in favor of Defendant on the basis of Brandt's failure to exhaust administrative remedies.

Assuming, for the sake of argument, that Brandt had properly exhausted his claims, he is still not entitled to relief, as set forth below.

B.    A *Bivens* Remedy is Not Available for Brandt's First and Fifth Amendment Claims

Brandt alleges that Defendant violated his First and Fifth Amendment rights by retaliating against him, placing him in a holding cell, and depriving him of pre-release placement under the Second Chance Act. (Doc. 1, at 2-3). Defendant argues that Brandt's retaliation and due process claims must be dismissed on the basis that there is no *Bivens* remedy available for these First and Fifth Amendment claims following the United States Supreme Court's decision in *Ziglar v. Abbasi*, 582 U.S. 120 (2017). (Doc. 35, at 15-26). The Court agrees and begins its discussion with an overview of *Bivens*.

In *Bivens*, the Supreme Court recognized an implied damages remedy for a Fourth Amendment violation committed by federal officials, whose conduct was not encompassed by the statutory remedy available against state actors under 42 U.S.C. § 1983. *See Bivens*, 403 U.S. at 397. Since the *Bivens* decision, the Supreme Court has extended the *Bivens* remedy only twice: first, to a claim for gender discrimination under the Fifth Amendment's Due Process Clause, *see Davis v. Passman*, 442 U.S. 228, 248-49 (1979), and later to a claim for inadequate prison medical care under the Eighth Amendment's Cruel and Unusual Punishment Clause, *see Carlson v. Green*, 446 U.S. 14, 18-23 (1980). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 582 U.S. at 131. Over the years that followed, the Supreme Court "consistently refused to expand

11

*Bivens* actions beyond these three specific contexts." *Mack v. Yost*, 968 F.3d 311, 318 (3d Cir. 2020).

In order to curb any further expansion of *Bivens*, the Supreme Court has established a rigorous two-part test for courts to follow when determining whether a *Bivens* action should be extended to a new context. *See Ziglar*, 582 U.S. at 139. Courts must first determine "whether a case presents a new *Bivens* context" by asking "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Id.* And if the case presents a new *Bivens* context, then courts must next determine whether any special factors counsel hesitation in allowing an expansion of the doctrine. *Id.* at 139-40.

In June of 2022, the Supreme Court's issued its decision in *Egbert v. Boule*, 596 U.S. 482, 492 (2022), and reemphasized that the Court's continued refusal to "imply a similar cause of action for other alleged constitutional violations" is intentional—recognizing a new *Bivens* cause of action is "a disfavored judicial activity." *See Egbert*, 596 U.S. at 483, 491 (quoting *Ziglar*, 582 U.S. at 136; *Hernandez v. Mesa*, 589 U.S. 93, 101-03 (2020)). *Egbert* clarified that the two-step process laid out in *Ziglar* "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *See Egbert*, 596 U.S. at 492. In other words: if there is "*any* rational reason (even one) to think that *Congress* is better suited" to determine the propriety of a cause of action, then a *Bivens* action cannot proceed. *See Egbert*, 596 U.S. at 496

(emphasis in original). The court must broadly inquire whether "there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate'"—and if the answer is "yes," or even potentially yes, the plaintiff cannot recover under *Bivens. See Egbert*, 596 U.S. at 496 (quoting *United States v. Stanley*, 483 U.S. 669, 681 (1987)).

The Third Circuit's decision in *Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024), reiterated the framework that courts are to use before implying a cause of action for money damages in a new *Bivens* context. The *Fisher* Court recognized that "*Egbert* tightened the *Ziglar* test and, in doing so, made a strong statement that lower courts should not extend *Bivens* beyond the contexts recognized in *Bivens*, *Davis*, and *Carlson*." *Id.* at 204. The Third Circuit further explained that *Egbert* modified *Ziglar*'s two-part inquiry in the following ways: "*Egbert*'s new articulation of [the first] step is clearer—and unequivocally narrows the universe of relevant cases to just three. *Egbert* requires us to ask whether [a plaintiff's] case meaningfully differs 'from [only] the *three cases* in which the Court has implied a damages action'" and, with respect to the second step, "*Egbert* now requires us to ask whether 'the Judiciary *is at least arguably less equipped* than Congress' to weigh the costs and benefits of a damages action [and, further]...*Egbert* holds that an administrative grievance procedure *is* an alternative remedy that forecloses a *Bivens* action." *Id.* at 204-05 (emphasis in original) (citing *Egbert*, 596 U.S. at 492, 497-98). Thus, the outcome of *Fisher* is, essentially, that extending a *Bivens* remedy to a new context will be unavailable in all but the most unusual of cases. *See Fisher*, 115 F.4th at 205 ("unless a case is

13

indistinguishable from *Bivens*, *Davis*, or *Carlson*, a damages remedy may be created by Congress, but not by the courts").

Guided by this precedent, the Court proceeds with *Ziglar*'s two-step analysis and must determine whether Brandt's *Bivens* claim presents a new context, and, if so, whether any special factors counsel against extending a *Bivens* remedy here. As stated, Brandt alleges that Defendant violated his First and Fifth Amendment rights by retaliating against him, placing him in a holding cell, and depriving him of pre-release placement under the Second Chance Act. (Doc. 1).

There is no question that these First and Fifth Amendment claims present new contexts—they are "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Ziglar*, 582 U.S. at 139. Brandt's instant claims on their face "bear little resemblance" to "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma," the contexts previously recognized by the Supreme Court. *Ziglar*, 582 U.S. at 140.

First, the Supreme Court has "never held that *Bivens* extends to First Amendment claims." *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012). Additionally, the Third Circuit has held that *Bivens* may not be extended to First Amendment retaliation claims in the prison context. *See, e.g., Mack*, 968 F.3d at 319-25 (declining to extend *Bivens* to a First Amendment retaliation claim in the prison workplace assignment context).

14

Second, Brandt asserts a *Bivens* claim based upon allegations that his due process rights were violated under the Fifth Amendment when he was placed in a holding cell and deprived of pre-release placement under the Second Chance Act. Although the Supreme Court has recognized a *Bivens* action for gender discrimination in violation of the Fifth Amendment, *see Davis*, 442 U.S. at 230, Brandt's claim plainly presents a new *Bivens* context and is factually different from the gender discrimination context in *Davis*. The landscape of a plaintiff's ability to bring different types of *Bivens* claims has changed drastically post-*Ziglar*. While Brandt's due process claims may arise under the same constitutional amendment as *Davis*, the Supreme Court has made clear that a common constitutional basis is not enough to link a new *Bivens* theory to an existing *Bivens* context. *See Hernandez*, 589 U.S. at 103 (indicating courts must "look beyond the constitutional provisions invoked"). This case alleges different misconduct than *Davis* and different legal standards would apply.

In sum, the Court concludes that Brandt's First and Fifth Amendment claims present new contexts for purposes of *Bivens*.

Having concluded that Brandt's claims present new contexts, the Court must determine whether "there are any special factors that counsel hesitation" in extending *Bivens*. *Hernandez*, 589 U.S. at 102 (internal quotation marks and alterations omitted) (quoting *Ziglar*, 582 U.S. at 136). If a court "ha[s] reason to pause before applying *Bivens* in

15

a new context or to a new class of defendants," then special factors counseling hesitation exist. *Hernandez*, 589 U.S. at 102.

In *Fisher*, the Third Circuit Court of Appeals recognized that the Bureau of Prisons' administrative remedy program is a special factor barring extension of the *Bivens* remedy to new contexts. *Fisher*, 115 F.4th at 207-08; *see also Kalu v. Spaulding*, 113 F.4th 311, 346 (3d Cir. 2024) ("The BOP's [administrative remedy program] is an 'administrative review mechanism[ ]' established by the political branches that 'foreclose[s] the need to fashion a new, judicially crafted cause of action.'" (quoting *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).  And, as the Supreme Court stated in *Goldey v. Fields*, 606 U.S. 942 (2025), "'an alternative remedial structure' already exists for aggrieved federal prisoners." *Goldey*, 606 U.S. at 944. (quoting *Ziglar*, 582 U.S. at 137).  "The existence of such alternative remedial procedures counsel against allowing *Bivens* suits even if such 'procedures are not as effective as an individual damages remedy.'" *Id.* at 944-45 (quoting *Egbert*, 596 U.S. at 498).  Therefore, the administrative remedy program bars this Court from extending *Bivens* to the new contexts presented by Brandt's claims.

Accordingly, the Court will dismiss Brandt's *Bivens* claim.  *See, e.g.*, *Egbert*, 596 U.S. at 486 (stating that Supreme Court precedent has "made clear that, in all but the most unusual circumstances," a *Bivens* remedy should not be recognized in new contexts).

## IV.    Leave to Amend

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant Brandt leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002). The Court finds that amendment would be futile because Brandt cannot remedy the defects in the complaint: that *Bivens* does not extend to his First and Fifth Amendment claims.

## V.    Conclusion

Consistent with the foregoing, the Court will grant Defendant's motion. (Doc. 29). A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: June **30**, 2026

17